## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **FEED THE KIDS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 5:26-cv-00860-G** |
| | ) | |
| **LINDEL FIELDS, Oklahoma State** | ) | |
| **Superintendent of Public Instruction,** | ) | |
| **in his official capacity; and KASSI** | ) | |
| **REDDELL, in her official capacity as** | ) | |
| **CACFP Program Manager,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## INTRODUCTION

The dispute before the Court is narrow and the answer is plain. A federal regulation provides that the State agency "shall provide a hearing" upon receipt of a timely request for administrative review. 7 C.F.R. § 226.6(k)(6)(i). Plaintiff Feed the Kids, Inc. ("FTK") made such a request. A state court, after a contested hearing, found that request timely and ordered the matter to an Administrative Law Judge. Defendants did not appeal that order. They did not seek a stay. They did not refer the case to an Administrative Law Judge (ALJ). They have not held any hearing. And while the matter sits in that procedural void, Defendants continue to withhold more than $216,000 in earned reimbursements, have announced that FTK's sponsorship will end at the close of the school year, and have placed FTK on a glide path to disqualification and the National Disqualified List. Defendants'

1

position reduces to this: FTK is finished, so no hearing is required. Federal law says the opposite. A hearing is required before the State imposes the conditions that end the organization. The refusal to provide that hearing while moving to terminate FTK is the violation this Court must stop.

Defendants' Response does not deny these facts. It does not identify any forum in which the federally required hearing is going to occur. It does not explain why two state-court orders have been disregarded. Instead, it strings together an Eleventh Amendment argument that *Ex parte Young* defeats; a "comity" argument supported by a habeas decision the Response misstates and miscites; an Oklahoma Governmental Tort Claims Act argument foreclosed by *Patsy v. Board of Regents*; and a USDA "directive" theory built on an informal email that postdates the violation and cannot rewrite the Code of Federal Regulations. Each defense fails. None of them, separately or together, gives FTK a forum.

The Supreme Court's decision last Term in *Williams v. Reed*, 604 U.S. 168 (2025), addresses the precise architecture Defendants now urge: state procedural rules cannot be used to immunize state officials from § 1983 claims that arise out of delays or denials in the very administrative process the State controls. *Williams* was decided in the state-court posture, but its reasoning rests on federal preemption, and that reasoning resolves this case. Defendants cannot demand exhaustion of a process they refuse to provide.

FTK respectfully requests that the Court grant the Emergency Application, order Defendants to refer FTK's February 6, 2026 request for review to an ALJ, restrain further adverse action against FTK's CACFP participation pending that hearing, and direct

Defendants to cease the withholding of earned reimbursements during the pendency of the administrative process.

**ARGUMENT**

**I.      Abstention is not warranted, and Defendants' own noncompliance proves the state forum inadequate.**

Defendants invoke the doctrine of 'comity' and quote what they cite as "*Rhines v. Weber*, 522 U.S. 269 (2005)," Resp. 6, for the proposition that this Court should defer to a sister sovereign "already cognizant of the litigation." The citation Defendants supply (522 U.S. 269) is not *Rhines v. Weber*; it is *Buchanan v. Angelone*, 522 U.S. 269 (1998), an Eighth Amendment death-penalty case unrelated to this dispute. The actual reporter cite for *Rhines v. Weber* is 544 U.S. 269 (2005). *Rhines* is a habeas decision addressing stay-and-abeyance procedure for mixed petitions under 28 U.S.C. § 2254. It does not establish a free-standing "comity" abstention doctrine, and it has no application to a § 1983 action seeking prospective relief against state officials. The doctrine Defendants actually invoke is *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention does not apply for three independent reasons.

**A.      The Pittsburg County proceeding is remedial, not coercive.**

The Tenth Circuit limits *Younger* abstention in civil cases to coercive state proceedings, in which the State has compelled a defendant's participation to enforce state law. *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888-91 (10th Cir. 2009). Where a plaintiff voluntarily initiates a state action to remedy state-inflicted harm rather than to defend

against state enforcement, the proceeding is remedial and *Younger* does not apply. *Id.* at 893.

FTK's Pittsburg County petition is a textbook remedial proceeding. Defendants, not FTK, initiated the underlying adverse action by issuing the Notice of Serious Deficiency and refusing to provide the federally required hearing. FTK then turned to state court for relief. That posture forecloses *Younger* at the threshold.

### B.    The state forum is inadequate because Defendants have refused to comply with its orders.

Even where its threshold conditions are met, *Younger* requires that the state forum provide an adequate opportunity to vindicate federal rights. *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 395 (10th Cir. 2016). Adequacy is measured by results, not theory. The Pittsburg County District Court held a contested hearing on March 3, 2026, found that FTK "provided timely notice of its intent to appeal," and entered a temporary injunction directing the matter to an Administrative Law Judge. Pl. Ex. 6. Defendants did not appeal that ruling. Defendants abandoned their attempted appeal to the Oklahoma Supreme Court. Defendants did not seek a stay. They simply ignored the order, and they continue to do so.

A forum whose orders state defendants openly disregard is not an adequate forum within the meaning of *Younger*. Defendants' own argument illustrates the point: they contend that the state-court injunction has "no legal effect," Resp. 8, while simultaneously contending that the same injunction supplies an adequate state remedy that bars federal jurisdiction. Defendants cannot have it both ways. If the injunction is functionally inert, the state forum is by definition inadequate. If the injunction is operative, Defendants are in

4

open violation of it. Either branch of the dilemma makes federal intervention proper, not improper. *See Courthouse News Serv. v. New Mexico Admin. Office of Cts.*, 53 F.4th 1245, 1259-61 (10th Cir. 2022) (*Younger* inapplicable where federal relief would not interfere with the state court's ability to enforce its own orders).

Defendants' journal-entry argument does not change the analysis. Defendants fault FTK for declining to negotiate "agreed language" for an appealable journal entry. Resp. 7. But the Pittsburg County court entered its ruling on March 3, 2026, in a minute order that took effect upon entry; the journal entry was a ministerial step. *Younger* exists to protect ongoing state proceedings; it does not exist to reward state officials who ignore the rulings those proceedings produce.

If the state court order has no effect, there is no adequate forum. If it has effect, Defendants are violating it. Either way, abstention fails.

**C.      Williams v. Reed forecloses Defendants' catch-22 exhaustion theory.**

Last Term, the Supreme Court held that state procedural rules cannot be used to immunize state officials from § 1983 claims that arise out of delays or denials in the very administrative process the State controls. *Williams v. Reed*, 604 U.S. 168 (2025). In *Williams*, Alabama insisted that unemployment claimants exhaust the administrative process before bringing a § 1983 claim alleging that the process itself was unlawfully delayed. The Court rejected that requirement as a "catch-22" and held it preempted by § 1983.

Defendants' position is the same catch-22. They argue that FTK's grievance must be resolved in the state administrative process while simultaneously refusing to refer the

matter to an ALJ as that process requires. They cannot demand exhaustion of a process they will not provide. *Williams* was decided in a state-court posture, but its preemption rationale applies with equal force here: a state procedural rule that operates to immunize state officials from a § 1983 claim about administrative delay is preempted, and a federal court is not required to enforce in its own jurisdiction what a state court could not. Together with *Patsy v. Board of Regents*, 457 U.S. 496 (1982), and *Brown*, these authorities place this Court's jurisdiction beyond doubt.

A State cannot block a federal claim by withholding the very process it says must be exhausted. That is the rule *Williams* enforces, and it resolves this case.

### II.    *Ex parte Young* supplies jurisdiction because Defendants are committing an ongoing violation of federal law.

FTK has sued two state officials in their official capacities for prospective injunctive relief to halt an ongoing violation of federal law. That is the paradigmatic application of *Ex parte Young*, 209 U.S. 123 (1908). The Tenth Circuit's inquiry is straightforward: a suit fits within the doctrine where (1) the defendants are state officials, (2) the complaint alleges a non-frivolous violation of federal law, (3) the relief sought is prospective and equitable, and (4) the suit does not implicate special sovereignty interests. *Elephant Butte Irr. Dist. v. Dep't of Interior*, 160 F.3d 602, 609 (10th Cir. 1998). All four are satisfied.

Defendants recite the rule that *Ex parte Young* requires "prospective relief for an ongoing violation of federal law," quoting *Free Speech Coalition v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024), and then assert, without analysis, that there is no ongoing federal violation here. The assertion is wrong. The violation FTK challenges is not a discrete past

act; it is Defendants' continuing refusal to refer the matter to an ALJ as 7 C.F.R. § 226.6(k)(6)(i) requires. That refusal persists every day the hearing is not held. The Tenth Circuit's decision in *Estate of Schultz v. Brown*, 846 F. App'x 689, 696 (10th Cir. 2021), is on point. There the court applied *Ex parte Young* to claims by Medicaid applicants seeking an order requiring Oklahoma to implement an impartial hearing system, holding that the requested relief addressed an ongoing procedural violation rather than a discrete past denial. The same analysis controls here.

Nor does the relief FTK requests fall outside the doctrine. Restraining further adverse action and ordering a referral to an ALJ are prospective in form and effect. Directing Defendants to cease the continuing withholding of earned reimbursements is also prospective: it does not seek damages for past acts but rather restores and maintains the status quo while the federally required hearing proceeds. The Supreme Court has long recognized that the ancillary fiscal effects of compliance with prospective federal-law obligations do not transform *Ex parte Young* relief into a barred suit against the State. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002); *Milliken v. Bradley*, 433 U.S. 267, 289 (1977). *Edelman v. Jordan*, 415 U.S. 651 (1974), bars retroactive money damages from the state treasury; it does not bar a federal court from preventing state officials from continuing to withhold federal funds whose disbursement is owed under federal regulation.

### A.    The USDA correspondence cannot displace a federal regulation.

Defendants place heavy weight on an April 8, 2026 email from USDA Branch Chief Mark Speight, characterizing it as a "directive" supporting OSDE's decision to terminate

FTK's sponsorship and transition schools directly to the State agency. Resp. 9-10. The argument fails on multiple levels.

First, an email is not a regulation. It is not a final agency action. It is not an order. Mr. Speight's email forwards "recommendations" and offers Food and Nutrition Service's (FNS) "support." Def. Ex. 1. It does not, because it cannot, waive a mandatory procedural requirement imposed by 7 C.F.R. § 226.6(k)(6)(i). The regulation states that the State agency "shall provide a hearing." An informal communication from one branch chief does not amend the Code of Federal Regulations. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (interpretive guidance does not have the force and effect of law).

Second, the timing matters. Mr. Speight's email is dated April 8, 2026, nearly two months after Defendants denied FTK's hearing request on February 13, 2026. Whatever the email says, it cannot retroactively cure a violation that began in February and has continued ever since. The federal violation is ongoing.

Third, the supplemental record cuts directly against Defendants' reading of the Speight email. On February 19, 2026, OSDE's own Program Director Jennifer Weber wrote to USDA-FNS that "Feed the Kids filed a timely suspension appeal, and the review official ruled in their favor, and they are not suspended." Notice of Supp. Evid., Ex. A. Defendants' brief acknowledges the same email and reproduces a sentence in which Ms. Weber further told USDA that FTK "did not file a timely appeal for the overclaim." Resp. 13. The two sentences *confirm rather than refute* the central problem: *OSDE bifurcated a single Notice into two procedural tracks*, granted the appeal on the suspension track that FTK plainly won, and unilaterally declared the SD/overclaim track "untimely." That

8

bifurcation is what produced the § 226.6(k)(6)(i) violation, and Mr. Speight's later email expresses no opinion on whether OSDE's timeliness call was correct in the first place.

### III.    The Governmental Tort Claims Act does not bar FTK's federal civil rights claims.

Defendants invoke the Oklahoma Governmental Tort Claims Act, 51 O.S. §§ 151-171, as if it could bar federal civil rights claims under § 1983. It cannot. The Supreme Court has held categorically that § 1983 plaintiffs are not required to exhaust state administrative or tort remedies before bringing suit in federal court. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). State notice-of-claim regimes, of which the GTCA is one, cannot supply the missing prerequisite that *Patsy* forbids. *Felder v. Casey*, 487 U.S. 131, 138, 153 (1988) (Wisconsin notice-of-claim statute preempted as applied to § 1983 claims).

Defendants' reliance on *Bright v. University of Oklahoma Board of Regents*, 705 F. App'x 768 (10th Cir. 2017) (unpublished), is misplaced. *Bright* addressed state-law tort claims, not § 1983 claims, and could not have held otherwise without overruling *Patsy* and *Felder*. By the GTCA's own terms, the statute governs claims of "tort," defined as a "legal wrong, independent of contract." 51 O.S. § 152(13). FTK has not pleaded a tort. It has pleaded claims under § 1983, the Supremacy Clause, and the Fourteenth Amendment. The GTCA does not apply.

### IV.    Defendants' "two causes of action" theory does not save their refusal to provide the federally required hearing.

Defendants' most developed merits argument is that the January 28, 2026 Notice initiated two separate adverse-action tracks: a Serious Deficiency / overclaim track governed by 7 C.F.R. § 226.6(k), and a Proposed Suspension track governed by 7 C.F.R.

9

§ 226.6(c). Resp. 11-12. Defendants concede that FTK timely appealed the proposed suspension and prevailed. They contend that FTK was untimely on the overclaim track. The argument fails for at least three reasons.

First, the timeliness premise is not as clean as Defendants suggest. The federal regulation runs the appeal window from the institution's *receipt* of the notice. 7 C.F.R. § 226.6(k)(5)(ii). OSDE's own published "Appeal Procedures," which OSDE provided to FTK with the Notice, define receipt: a notice is "considered received by the institution … five days after being sent to the addressee's last known mailing address, fax number, or email address." Pl. Ex. 8 at 2 (emphasis in original). That definition is OSDE's, not FTK's. OSDE cannot publish a five-day constructive-receipt rule, deliver it to the regulated party, and then disavow it the moment the rule cuts in the regulated party's favor. The Pittsburg County District Court reviewed this very timeline and found FTK's appeal timely. Pl. Ex. 6.

Even if the Court were inclined to perform an independent timeliness calculation, the question on a TRO motion is not whether FTK will ultimately prevail on the timeliness dispute; it is whether FTK has shown a likelihood of success. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). A state court of competent jurisdiction has already resolved the timeliness question in FTK's favor. OSDE abandoned its appeal. That, by itself, satisfies the standard.

Second, even on Defendants' reading, FTK's timely appeal of the proposed suspension matters. Defendants concede that FTK "filed a timely suspension appeal, and the review official ruled in their favor, and they are not suspended." Notice of Supp. Evid.,

Ex. A; Resp. 13. The proposed suspension was the immediate adverse action threatening FTK's operations, and FTK won. Defendants' continuing refusal to disburse earned reimbursements, and their April 7, 2026 communication that FTK's sponsorship will end at the close of the school year, are inconsistent with the agency's own concession that the suspension was set aside. Defendants are presently imposing the practical consequences of a suspension that no longer exists.

Third, Defendants' bifurcation theory does not change the federal hearing right. Whether the appeal is characterized as one of the proposed suspension, the serious-deficiency determination, or the overclaim, 7 C.F.R. § 226.6(k)(6)(i) requires the State agency to "provide a hearing" upon receipt of any timely request for administrative review. Defendants offer no authority for the proposition that an agency may bifurcate a single Notice into multiple subtracks and then deny the federally required hearing on one subtrack while imposing the consequences across all subtracks. That practice would convert a mandatory federal procedural protection into an exhaustible loophole. *Williams v. Reed* forbids exactly that result. 604 U.S. at 178.

### A.     *The Fourteenth Amendment provides an independent basis for relief that does not depend on the timeliness dispute.*

Even setting aside 7 C.F.R. § 226.6(k)(6)(i), the Fourteenth Amendment requires notice and an opportunity to be heard before a property interest is taken. *Mathews v. Eldridge*, 424 U.S. 319 (1976). FTK has a constitutionally protected property interest in continued CACFP participation and in the reimbursements on which its operations depend. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Defendants concede they have not held

any hearing. They have nonetheless: (i) declared FTK seriously deficient; (ii) demanded payment in full of $344,939.33 in alleged overclaims; (iii) withheld more than $216,000 in earned reimbursements; (iv) prohibited FTK from retaining its allowable administrative-cost percentage; and (v) announced that FTK's sponsorship will end at the close of the school year. Whatever label OSDE attaches to those acts, their cumulative effect is termination without process. The *Mathews* balancing weighs heavily for FTK: the private interest is the destruction of an organization; the risk of erroneous deprivation in the absence of a hearing is high (the state court already found Defendants' timeliness call unsupportable); and the agency's burden is the ordinary cost of conducting the hearing federal regulation requires it to conduct anyway.

Even if Defendants were correct on every regulatory point, the procedural-due-process violation would still be ongoing. Termination of a federally protected interest cannot be effected by self-help; it requires a hearing. Defendants have provided none.

### V.      FTK satisfies each of the TRO factors.

#### A.      *FTK is likely to succeed on the merits.*

The Eleventh Amendment, the GTCA, and *Younger* do not bar this action; *Ex parte Young* supplies jurisdiction; and the merits turn on a regulation that uses mandatory language: the State agency "shall provide a hearing." 7 C.F.R. § 226.6(k)(6)(i). "When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). FTK timely requested the hearing. A state court so found. OSDE's own Program Director admitted in writing to USDA that FTK "filed a timely suspension appeal" and prevailed.

12

The Fourteenth Amendment provides an independent path to the same result. The merits favor FTK.

### B.      The harm is irreparable, and it is not self-inflicted.

Defendants argue that FTK will cease operations regardless of this Court's intervention. That is precisely why relief is required. The absence of process at the point of termination is irreparable. Defendants contend that any harm to FTK is self-inflicted because FTK is not "financially viable" within the meaning of 7 C.F.R. § 226.6(b). Resp. 13. The argument is a regulatory bootstrap. Beginning in November 2025, OSDE prohibited FTK from retaining the allowable administrative-cost reimbursement, permitting only 1% in November and zero administrative funds in December and January. Parker Decl. ¶ 3. OSDE has now withheld over $216,000 in earned reimbursements. *Id.* ¶¶ 14-16. Defendants cannot manufacture a financial crisis by withholding earned funds and then point to that crisis as a regulatory basis for terminating the sponsor. Defendant Reddell personally reviewed and approved FTK's 2026 application, including the Viability, Capability, and Accountability Questionnaire in which FTK disclosed that it would maintain one month of reimbursements in reserve and that CACFP reimbursements would be its only funding stream. *Id.* ¶ 3. Any suggestion that FTK should have maintained alternative funding beyond what OSDE itself approved is inconsistent with the record.

The irreparable-harm showing is overwhelming. CACFP reimbursements are FTK's sole source of operating revenue. Parker Decl. ¶ 3. FTK's program staff are expected to depart April 30, 2026 because FTK cannot guarantee compensation. *Id.* ¶ 18. Once that staffing capacity is lost, the institutional relationships, community trust, and operational

capacity FTK has built cannot be reconstructed. *Id.* ¶ 19. Loss of organizational goodwill and operational continuity is well-recognized irreparable harm. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). The deprivation of a federally protected procedural right is itself an irreparable injury. *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001).

### C.    The end of the school year does not moot this case.

Defendants argue that the close of the 2025-2026 school year will moot any relief because the CACFP "operates only during the regular school year." Resp. 14. The argument fails. The more than $216,000 in reimbursements Defendants are withholding does not vanish with the school calendar, and FTK's right to those earned funds does not expire on May 31. The federal regulation requires a hearing whether or not the school year is in session, and the consequences of an unappealed serious-deficiency determination, including disqualification, placement on the National Disqualified List, and the destruction of FTK's organizational capacity, extend far beyond the current academic calendar. The case is live, and the relief requested is not contingent on continued program operation.

Defendants' invocation of *Department of Education v. California*, 604 U.S. 650 (2025), is misplaced. That decision addressed a stay pending appeal in an APA action where the federal government was lawfully terminating grants. Here, the federal regulation requires the hearing FTK seeks; the federal agency has not acted to terminate FTK; and the State, not the federal government, is the party violating federal law.

14

### D.     The balance of equities and the public interest favor FTK.

Defendants ask the Court to weigh the public interest in their favor based on "rampant abuse," Resp. 14, and on their role as "custodian of the federal dollars," Resp. 16. But the public interest is served, not undermined, by enforcement of the procedural protections that Congress and USDA built into the regulatory scheme. Those protections exist precisely because the program serves children who depend on continuous meal service and on the integrity of both sponsors and the State agency. Allowing a state agency to terminate a sponsor without the hearing federal law requires would not protect program integrity; it would erode the rule of law that gives the program its legitimacy.

Where the requested injunction merely requires a state agency to comply with the federal law it is already obligated to follow, the burden on the agency is zero. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). Defendants' program-integrity concerns can be vindicated in the very hearing they are refusing to provide. If the evidence supports termination, an ALJ will so find. What it cannot support is termination without the hearing federal regulation requires.

### CONCLUSION

Defendants ask this Court to look away from a federal-law violation they cannot defend. The federal regulation is mandatory. The state court found FTK's appeal timely. OSDE's own Program Director told USDA-FNS that FTK filed a timely suspension appeal and won it. And yet no hearing has been provided, two state-court orders have been ignored, and more than $216,000 in earned reimbursements has been withheld without

15

process. Federal intervention is not optional in these circumstances; it is what *Ex parte Yo*ung exists to permit and what *Williams v. Reed* confirms. Plaintiff respectfully requests that this Court grant the Emergency Application and enter an order:

(1)    directing Defendants, within 48 hours of entry of the Court's order, to refer FTK's February 6, 2026 request for administrative review to an Administrative Law Judge and to provide written confirmation of such referral to FTK and the Court;

(2)    restraining Defendants and their agents from terminating, suspending, disqualifying, or taking any other adverse action against FTK's CACFP participation pending the completion of the administrative hearing required by 7 C.F.R. § 226.6(k);

(3)    restraining Defendants from continuing to withhold earned CACFP reimbursements during the pendency of the administrative process and directing that FTK be permitted to retain the administrative-cost reimbursement allowable under 7 C.F.R. § 226.7;

(4)    restraining Defendants from implementing or giving effect to the February 13, 2026 timeliness determination pending the outcome of the administrative hearing; and

(5)    granting such other and further relief as the Court deems just and proper.

Dated: April 28, 2026.                    Respectfully submitted,

                                          **GORDON & REES**

                                          */s/ Robert A. Bragalone*
                                          **ROBERT A. BRAGALONE, OBA #31898**
                                          Telephone: (214) 231-4714 (Direct Dial)
                                          Email: BBragalone@grsm.com

                                          **JAMES F. KELLY, OBA #16510**
                                          Telephone: (918) 606-6925
                                          Email: JFKelly@grsm.com

                                          3030 NW Expressway, Suite 300, #682
                                          Oklahoma City, OK 73112

                                          **ATTORNEYS FOR PLAINTIFF FEED THE
                                          KIDS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on April 28, 2026, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.  Any other counsel of record or unrepresented party will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

                                          */s/ Robert A. Bragalone*
                                          Robert A. Bragalone